EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lind O. Merle Feliciano, como Comisionado Electoral del Partido Popular Democrático<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de Su Presidente, el Hon. Juan Ernesto Dávila Rivera y otros<br><br>Recurridos | Certiorari<br><br>2020 TSPR 71<br><br>204 DPR \_\_\_\_\_ |

Número del Caso: CC-2020-0247

Fecha: 27 de julio de 2020

Tribunal de Apelaciones:

  Panel I

Abogados de la parte peticionaria:

    Lcdo. Jorge Martínez Luciano
    Lcdo. Gerardo A. Cruz Maldonado
    Lcdo. Gerardo De Jesús Annoni
    Lcdo. Emil Rodríguez Escudero
    Lcdo. Nelson J. Rodríguez Vargas

Abogada de la parte recurrida:

  Lcda. María E. Suárez Santos

Materia: Resolución del Tribunal con Votos Disidentes

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lind O. Merle Feliciano, como Comisionado Electoral del Partido Popular Democrático<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, el Hon. Juan Ernesto Dávila Rivera y otros<br><br>Recurridos | CC-2020-0247 | *Certiorari* |

RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de julio de 2020.

Examinada la *Petición de certiorari* que presentó la parte peticionaria, se provee no ha lugar.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez está conforme y hace constar la siguiente expresión, a la cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García:

Considero que el requisito de residencia dispuesto en la Sección 6 del Artículo III de la Constitución de Puerto Rico aplica igualmente a los puestos distritales representativos y senatoriales. Art. III, Sec. 6, Const. PR, LPRA, Tomo 1. Una lectura armoniosa e integrada del texto constitucional resulta en tal conclusión. Interpretar lo contrario, no solo constituye una lectura fragmentada de dicha disposición constitucional, sino que obvia igualmente que los distritos senatoriales estarán compuestos y demarcados por distritos representativos. Art. VIII, Secc. 1, Const. PR, LPRA, Tomo 1; Art. III, Sec. 4, Const. PR, LPRA, Tomo 1. Debido a lo anterior, sería un contrasentido bifurcar el requisito de

residencia de un senador o senadora distrital y distinguirlo de un cargo representativo distrital, precisamente debido a que los distritos senatoriales están conformados por distritos representativos. Por tanto, una persona que cualifica como representante por distrito de un componente del distrito senatorial, no puede ser privada de representar geográficamente a ese distrito senatorial. Es decir, si una persona cualifica para representar a un distrito representativo A que está contenido en el distrito senatorial A, es desacertado resolver que no puede aspirar por ese distrito senatorial pero sí al distrito representativo que lo configura.

Por tales razones, considero que el Tribunal de Apelaciones, mediante el panel de los Jueces Sánchez Ramos, Candelaria Rosa y Pagán Ocasio, adjudicó correctamente la controversia ante nuestra consideración. En consecuencia, estoy conforme con proveer *no ha lugar* al recurso de epígrafe.

La Jueza Presidenta Oronoz Rodríguez emitió un Voto particular disidente, al cual se une el Juez Asociado señor Martínez Torres. El Juez Asociado señor Martínez Torres emitió un Voto particular disidente. La Juez Asociada señora Rodríguez Rodríguez expediría y hace constar la expresión siguiente:

Por tratarse de un asunto que requiere el análisis de una cláusula constitucional que no ha sido interpretada anteriormente por este Tribunal, la Juez Asociada señora Rodríguez Rodríguez expediría el recurso para pautar.

El Juez Asociado señor Colón Pérez expediría y desea hacer constar la expresión siguiente:

El Juez Asociado señor Colón Pérez expediría el presente recurso a los fines de pautar si, tras un análisis integral de las disposiciones constitucionales pertinentes, procede aplicar la excepción al requisito de residencia en el distrito -contemplada en el Art. III, Sec. 6, de la Constitución del Estado Libre Asociado de Puerto Rico- a los candidatos a senadores por distrito, así como se le aplica a los candidatos a representantes por distrito que residen en municipios multidistritales.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lind O. Merle Feliciano, como Comisionado Electoral del Partido Popular Democrático<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, el Hon. Juan Ernesto Dávila Rivera y otros<br><br>Recurridos | CC-2020-0247 | *Certiorari* |

La Jueza Presidenta Oronoz Rodríguez emitió un Voto particular disidente, al cual se une el Juez Asociado señor Martínez Torres.

En San Juan, Puerto Rico, a 27 de julio de 2020.

Disiento respetuosamente de la decisión de una Mayoría de este Tribunal de denegar este recurso. Con ese proceder, se deja en vigor una interpretación errónea del Art. III, Sección 6 de la Constitución que ignora la intención clara que tuvieron los constituyentes al adoptarla. Como consecuencia, se avala una lectura del texto constitucional que desvirtúa la función importante que esa disposición desempeña en nuestra democracia y esquema constitucional.

I.

Para las personas responsables de diseñar nuestro sistema constitucional era importante garantizar que la Asamblea Legislativa estuviera integrada por individuos que tuvieran

un vínculo directo con la población que representan. En atención a lo anterior, la Constitución divide a Puerto Rico en ocho distritos senatoriales, cada uno de los cuales contiene cinco distritos representativos, y fija un requisito de residencia para los legisladores que interesen representar a esos distritos.[1] A esos efectos, nuestra Constitución dispone:

> Para ser electo o nombrado Senador o Representante por un distrito será requisito haber residido en el mismo durante no menos de un año con anterioridad a su elección o nombramiento. Cuando hubiere más de un distrito representativo en un municipio, se cumplirá este requisito con la residencia en el municipio.[2]

En consecuencia, la extensa mayoría de los legisladores en Puerto Rico –por disposición constitucional– son legisladores por distrito, por lo que tienen que ser electos por votantes que residan en distritos geográficamente definidos.[3] Aunque esta disposición constitucional se aprobó sin debate,[4] su propósito es sencillo y surge diáfanamente del informe complementario que presentó la Comisión de la Rama Legislativa a la Convención Constituyente:

> Es requisito adicional de índole general el que todo senador o representante por un distrito haya residido en el mismo por lo menos durante un año. **Tal disposición se ha consignado para fijar con más precisión la relación entre los representantes y sus representados, y para crear un vínculo del cual ha de dimanar necesariamente la responsabilidad.**[5]

---

[1] Art. III, Secs. 3, 4, 6, Const. ELA, Tomo 1.
[2] Íd., Sec. 6.
[3] De los 51 miembros que componen la Cámara de Representantes y los 27 que componen el Senado, 40 y 16 respectivamente son legisladores por distrito, por lo que están sujetos al requisito de residencia en el distrito.
[4] J. Trías Monge, *Historia Constitucional de Puerto Rico*, Editorial UPR, Río Piedras, 1982, Vol. III, pág. 150.
[5] 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico, pág. 2598 (1961) (Énfasis suplido).

Como puede apreciarse, el requisito de residencia se adoptó en la Constitución con el fin de garantizar que existiera un vínculo directo entre los legisladores y las personas que representan, de manera que los legisladores de distrito pudieran responder efectivamente a las necesidades y preocupaciones de las personas que residen en su distrito. Véase Eugene D. Mazo, Residency and Democracy: Durational Residency Requirements from the Framers to the Present, 43 Fla. St. U. L. Rev. 611, 670 (2016) ("The assumption is that a candidate who lives in the district for a longer period of time will be more knowledgeable about that district's issues and its constituents' needs"). Se trata de un requisito de hondo arraigo en los estados de Estados Unidos y cuyo origen se remonta al tiempo antes de la fundación de la nación. Mazo, supra, págs. 614-615. Incluso antes de la aprobación de nuestra Constitución en el 1952, ya los Arts. 26 y 27 de la Ley Jones del 1917 disponían requisitos de residencia para los senadores y representantes. Documentos Históricos, LPRA, Tomo 1.

Este caso involucra un incumplimiento con ese requisito. Examinemos los hechos que lo produjeron, los cuales no están controversia.

## II.

La Sra. Gladys M. Conty Hernández (señora Conty) reside en el Precinto 6 del Municipio de Guaynabo, correspondiente al Distrito Senatorial de San Juan. No obstante, interesa aspirar al escaño de Senadora por el Distrito de Bayamón bajo

la insignia del Partido Movimiento Victoria Ciudadana (MVC). Guaynabo es un municipio multridistrital, lo que quiere decir que a través de su demarcación territorial discurren las líneas que delimitan dos de los ocho Distritos Senatoriales que contempla la Sección 3 del Artículo III de nuestra Constitución.[6] La zona sur del Municipio corresponde al Precinto 6 y forma parte del Distrito Senatorial de San Juan. La zona norte del Municipio corresponde al Precinto 7 y forma parte del Distrito Senatorial de Bayamón.

En diciembre de 2019, la señora Conty intentó infructuosamente de tramitar su solicitud de candidatura en el sistema electrónico que habilitó la Comisión Estatal de Elecciones (CEE) para ese propósito. En consecuencia, la Presidenta del MVC, la Lcda. Ana Irma Rivera Lassén, envió una carta al Presidente de la CEE, el Hon. Juan Ernesto Dávila Rivera, solicitando que se autorizara la candidatura de la señora Conty al escaño de Senadora por el Distrito de Bayamón. No existiendo consenso entre los Comisionados Electorales, correspondió a su Presidente adjudicar la controversia. Este emitió una Resolución en la que determinó que la señora Conty podía aspirar al escaño de Senadora por el Distrito de Bayamón. Lo anterior, debido a que, a su juicio, la excepción al requisito de residencia que contempla la Sección 6 del Artículo III de nuestra Constitución aplica tanto a representantes como a senadores por distrito. Razonó que, debido a que el Municipio tiene más de un distrito

---

[6] Art. III, Sec. 3, Const. ELA, LPRA, Tomo 1.

representativo, se activó la condición que permite a la candidata prescindir del requisito de residencia, por lo que autorizó la candidatura.

Inconforme, el Comisionado del PPD, Lcdo. Lind O. Merle Feliciano (Comisionado del PPD), presentó un recurso de revisión en el Tribunal de Primera Instancia.[7] Luego de algunos trámites no necesarios aquí pormenorizar, el Tribunal de Primera Instancia emitió una Sentencia mediante la cual revocó la determinación de la CEE. En lo pertinente, resolvió que la excepción al requisito de residencia no aplica a los senadores por distrito, pues "al especificar que cuando se trate de un municipio con varios ***distritos representativos***, la intención de los Constituyentes era que tal excepción solo les aplicara a los representantes, ya que estos son los únicos que pueden correr por un distrito representativo".[8] Pesó en el ánimo del foro primario que los constituyentes incluyeron el término "distritos representativos" al establecer la excepción, en vez de solo "distritos" como lo hicieron al enunciar la norma general en la primera oración.[9]

El Comisionado Electoral del MVC, el Sr. Héctor Alejandro Narváez, y la señora Conty apelaron la Sentencia. La CEE también apeló. El Tribunal de Apelaciones consolidó

---

[7] *Véase* Art. 4.001 del Código Electoral de Puerto Rico para el Siglo XXI (Código Electoral), Ley Núm. 78-2011, según enmendada, 16 LPRA sec. ant. 4031.
[8] *Sentencia*, Apéndice, pág. 128 (Énfasis en el original).
[9] Íd.

los recursos y, luego de algunos trámites, emitió una Sentencia mediante la cual revocó la determinación del foro primario. Basó su determinación en que, en una democracia, se debe interpretar el derecho de manera que se promueva la mayor participación política. Según el foro apelativo intermedio, "el carácter 'representativo' al que alude la disposición constitucional no remite a la condición de representante en oposición a senador, sino más bien consigna la naturaleza democrática de ambos puestos".[10] Concluyó que distinguir entre senadores y representantes en este contexto equivale a interpretar la disposición constitucional contradictoriamente.

De esa determinación recurre ante nos el Comisionado del PPD mediante un recurso de *certiorari*. Además de reiterar el análisis que realizó el foro primario, argumenta que cuando los constituyentes quisieron que varias oraciones aplicasen a miembros de ambos Cuerpos fue categórico y específico, aun cuando eso conllevase la repetición de términos.[11] Plantea que al referirse a "distritos representativos" en lugar de "distritos representativos o senatoriales" o solamente a

---

[10] *Sentencia del Tribunal de Apelaciones*, Apéndice, pág. 11.

[11] *Petición de Certiorari*, pág. 9. Como ejemplo, citan la Sección 8 del Art. III de la Constitución: "El término del cargo de los **Senadores y Representantes** comenzará el día dos de enero inmediatamente siguiente a la fecha en que se celebre la elección general en la cual hayan sido electos. Cuando surja una vacante en el cargo de **Senador o Representante** por un distrito, dicha vacante se cubrirá según se disponga por ley. Cuando la vacante ocurra en el cargo de **un Senador o un Representante** por Acumulación, se cubrirá por el Presidente de la Cámara correspondiente, a propuesta del partido político a que pertenecía el **Senador o Representante** cuyo cargo estuviese vacante, con un candidato seleccionado en la misma forma en que lo fue su antecesor. La vacante de un cargo de **Senador o Representante** por Acumulación electo como candidato independiente, se cubrirá por elección en todos los distritos" (Énfasis suplido).

"distritos", los constituyentes debieron haber querido excluir a los senadores por distrito de beneficiarse de la excepción al requisito de residencia.

Así, la controversia quedó trabada de la forma siguiente: si la excepción al requisito de residencia para los legisladores por distrito que contempla el Artículo III, Sección 6 de nuestra Constitución aplica únicamente a los candidatos al escaño de representantes por distrito, o si esta también cobija a los candidatos a los escaños de senador por distrito. En particular, debíamos determinar si una candidata que reside en un municipio que está dividido en dos distritos senatoriales puede aspirar al escaño de senadora por distrito correspondiente al distrito senatorial en que no reside.

### III.

La primera oración del Art. III, Sección 6 de la Constitución establece una norma general que, por sus propios términos, aplica a los senadores y a los representantes por distrito ("[p]ara ser electo o nombrado **Senador o Representante** por un distrito será requisito haber residido en el mismo durante no menos de un año con anterioridad a su elección o nombramiento").[12] La segunda oración de la disposición establece una excepción a esa norma general ("[c]uando hubiere más de un **distrito representativo** en un

---

[12] Art. III, Sec. 6, Const. ELA, Tomo 1 (Énfasis suplido).

municipio, se cumplirá este requisito con la residencia en el municipio").[13]

Al analizar esa disposición, el Tribunal de Apelaciones resolvió que el término "distrito representativo" abarca distritos representativos y senatoriales, puesto que se refiere a la "naturaleza democrática" de los escaños.[14] No obstante, en varias otras secciones de la Constitución se utilizan estos términos de manera específica para referirse a uno o el otro tipo de distrito. Por lo tanto, aceptar el razonamiento de ese tribunal equivaldría a avalar que el término "distrito representativo", según utilizado en la Sección 6 del Artículo III de la Constitución, tiene un significado distinto al que tiene en todos los otros artículos y secciones de la Constitución. Esa interpretación no nos persuade.

Según resolvió el foro primario, el uso de la palabra "distrito" sin más en la primera oración implica que los constituyentes quisieron que el requisito de residencia aplicara a todos los legisladores por distrito. En cambio, al establecer la excepción emplearon el término "distrito representativo" en lugar de "distrito" o "distritos senatoriales y representativos", lo cual extendería el alcance de la excepción a ambos tipos de legislador. Incluso, la Convención Constituyente consideró una enmienda para eliminar del Art. III de la Constitución "todo lo que se

---

[13] Íd.
[14] *Sentencia*, Apéndice, pág. 13.

relacione y dice y habla de distritos senatoriales y representativos, y para que quede enmendado todo eso por 'distritos electorales' y nada más".[15] **Esa enmienda se derrotó en la Convención Constituyente**, lo cual evidencia que los constituyentes optaron expresamente por conservar la distinción entre los distritos representativos y senatoriales en el texto constitucional que estamos llamados a interpretar. Además, tratándose de una norma general que busca maximizar la representatividad en nuestro sistema democrático, debemos interpretar su excepción restrictivamente, lo cual implicaría excluir de su alcance a los candidatos a senador por distrito.

Todo lo anterior apunta a que los constituyentes tuvieron la intención de limitar el alcance de la excepción a los representantes por distrito, pues solamente estos pueden aspirar a esos escaños. Por definición, un senador por distrito representa a su distrito senatorial y no a un solo distrito representativo, como sucede con el representante por distrito. Contrario a lo que sugieren algunos compañeros, el hecho de que cada distrito senatorial abarque a su vez cinco distritos representativos no altera ese hecho. En fin, debido a que el candidato a senador por distrito no está aspirando al escaño al cual se refiere la excepción, esta no le aplica.

Un análisis de la historia y el diseño de nuestra Constitución refuerza esta conclusión. De entrada, resulta imprescindible destacar que la demarcación actual de

---

[15] Diario de Sesiones, supra, pág. 1315.

distritos senatoriales y representativos en Puerto Rico no es

un accidente, sino producto del diseño constitucional.

Conscientes de que los cambios poblacionales podían afectar

la representatividad de los distritos que crearon, los

constituyentes ingeniaron un mecanismo para asegurar que la

demarcación de distritos senatoriales y representativos

variara a través de nuestra historia para reflejar nuevas

realidades y cambios poblacionales.[16] A esos efectos, se creó

la Junta Constitucional Revisora de Distritos Senatoriales y

Representativos (Junta Constitucional) que contempla el Art.

III, Sección 4 de la Constitución. Este dispone:

> En las primeras y siguientes elecciones bajo esta
> Constitución regirá la división en distritos
> senatoriales y representativos que aparece en el
> Artículo VIII. Dicha división será revisada después
> de cada censo decenal a partir del año 1960, por una
> Junta que estará compuesta del Juez Presidente del
> Tribunal Supremo como Presidente y de dos miembros
> adicionales nombrados por el Gobernador con el
> consejo y consentimiento del Senado. Los dos

---

[16] Según surge del informe que rindió la Comisión de la Rama Legislativa a la Convención Constituyente:

> La Comisión entiende que el número de distritos senatoriales y representativos debe mantenerse inalterado y que s[o]lo debe variarse por enmienda a la constitución. Los cambios poblacionales pueden ser atendidos mediante la revisión periódica de la distribución del territorio y de la población en distritos. La necesidad de tal revisión se evidenciará en cada censo, pudiendo utilizarse para ello el censo federal o cualquier censo oficial del gobierno de Puerto Rico que se disponga por ley.
>
> […]
>
> Como la Junta no tendrá la facultad para aumentar o disminuir el número de distritos senatoriales o representativos, ni el número de miembros de las cámaras, tendrá necesariamente que señalar nuevas demarcaciones a los distritos cuando lo justifiquen los cambios poblacionales. Para así hacerlo será indispensable variar la composición geográfica de los distritos creados por la constitución. Sin embargo[,] la Junta deberá guiarse por el objetivo de mantener los distritos compuestos de territorios contiguos y compactos.

Diario de Sesiones, supra, pág. 2592.

miembros adicionales no podrán pertenecer a un mismo partido político. Cualquier revisión mantendrá el número de distritos senatoriales y representativos aquí creados, los cuales estarán compuestos de territorios contiguos y compactos y se organizarán, hasta donde sea posible, sobre la base de población y medios de comunicación. Cada distrito senatorial incluirá siempre cinco distritos representativos.

La Junta adoptará sus acuerdos por mayoría y sus determinaciones regirán para las elecciones generales que se celebren después de cada revisión. La Junta quedará disuelta después de practicada cada revisión.[17]

En virtud de esa disposición los constituyentes delegaron a la Junta Constitucional la tarea de demarcar periódicamente las unidades políticas en donde los legisladores por distrito deben residir para poder representarlas en la Legislatura. Se trata de un ejercicio que requiere sopesar varios factores que fija la propia Constitución, tales como compacidad, geografía, contigüidad, cambios poblaciones y los medios de comunicación.

Al trazar las líneas que definen los distritos senatoriales y representativos, la Junta identifica una serie de unidades políticas con el entendimiento de que serán representadas por personas que residan dentro de sus límites. Resulta contrario al diseño de la Constitución permitir que se ignore la fuerza vinculante de las determinaciones finales de la Junta al permitir que una persona que no vive en un distrito senatorial represente a los electores que allí residen.[18] Lo anterior, particularmente en vista de que, según

---

[17] Art. III, Sec. 4, Const. ELA, Tomo 1.

[18] Ciertamente, ocurre algo similar cuando la excepción se aplica a los representantes por distrito, pues opera para permitir que representen a un distrito representativo en el cual no residen. Sin embargo, según planteado, es razonable pensar que los constituyentes extendieron ese

hemos expresado, tales demarcaciones obligan a los partidos políticos y al ordenamiento electoral en general.[19]

Al no expedir este recurso se deja en vigor una interpretación que contradice el Art. III, Sección 4 de la Constitución y nuestros precedentes. Permite a una candidata aspirar a representar a una comunidad política que está fuera de una demarcación que la Junta Constitucional fijó en atención a los criterios que la Constitución exige deben considerarse en este contexto.

Los constituyentes entendían que los intereses, problemas y preocupaciones de las personas que residen en un distrito pueden ser radicalmente distintos a los que albergan aquellos que residen en otro distrito. Para lograr que esos intereses fueran representados adecuadamente en la Legislatura, exigieron que los legisladores por distrito cumplieran con el requisito de residencia que establece el Art. III, Sección 6 de la Constitución. Según surge del texto constitucional, la única excepción a esa regla general ocurre cuando un representante por distrito aspira a representar un distrito representativo en donde no reside pero que está localizado en un municipio en donde ha residido por más de un año. Es lógico que la excepción solo aplique en ese supuesto, pues el riesgo de que un representante carezca de un vínculo

---

beneficio a los representantes por razón de que las unidades que representan son más pequeñas, lo que garantiza un vínculo más fuerte con estas.

[19] García Passalacqua, supra, pág. 67 ("[u]na vez establecida por la Junta Constitucional la división electoral correspondiente, **los partidos políticos y el ordenamiento electoral vienen obligados a seguirla** en lo concerniente a la elección de los candidatos de distritos regulares para el Senado y la Cámara") (Énfasis suplido).

fuerte con un distrito representativo en el que no reside se reduce una vez este acredita que ha vivido en el municipio donde se encuentra ese distrito por más de un año. En cambio, si se le permite a un candidato a senador por distrito beneficiarse de la excepción, este podría aspirar a cualquiera de los dos distritos senatoriales que se encuentren en su municipio, cada uno de los cuales a su vez comprende varios municipios. Sin duda, el potencial de que no exista un vínculo con los representados y su localidad es mayor en el segundo supuesto.

Por último, resaltamos que, contrario a lo que argumentaron la CEE y el MVC en los foros recurridos, en la primera distribución de distritos senatoriales y representativos –la cual ocurrió en la propia Convención Constituyente– se dio el caso de que en un municipio, San Juan, existían dos distritos senatoriales.[20] Sin embargo, eso no movió a los constituyentes a incluir lenguaje expreso en el texto constitucional para aclarar que los senadores por distrito también están cobijados por la excepción. Lo

---

[20] Diario de Sesiones, supra, págs. 2592-2593. En la primera redistribución electoral, el Distrito Senatorial de San Juan incluía el Distrito Representativo 1, el cual estaba comprendido por "[l]a Capital de Puerto Rico **excluyendo** los actuales precintos electorales de Santurce y **Río Piedras**". Íd., pág. 2593 (Énfasis suplido). Por otro lado, el Distrito Senatorial de Bayamón incluía el Distrito Representativo 8, el cual estaba comprendido por "[e]l **actual precinto electoral de Río Piedras** excluyendo los barrios Hato Rey, Puerto Nuevo, y Caparra Heights de la Capital de Puerto Rico". Íd. (Énfasis suplido). Como vemos, el precinto electoral de Río Piedras –que ya para ese entonces formaba parte del Municipio de San Juan– pertenecía al Distrito Senatorial de Bayamón. Por lo tanto, la redistribución electoral que realizaron los constituyentes en el 1952 provocó que en el Municipio de San Juan coexistieran dos distritos senatoriales: el Distrito Senatorial de San Juan (que excluía el precinto electoral de Río Piedras) y el Distrito Senatorial de Bayamón (que incluía el precinto electoral de Río Piedras).

anterior apoya la conclusión de que, aún conscientes de que en un mismo municipio podían existir dos distritos senatoriales, los constituyentes omitieron incluir lenguaje en la excepción que extendiera su alcance para aplicar también a los candidatos a senador por distrito.

IV.

El hecho de que la señora Conty no deba poder aspirar al escaño de Senadora por el Distrito de Bayamón no es una anomalía; es parte del diseño constitucional. La señora Conty no reside en el mismo distrito senatorial que las personas que aspira representar. En consecuencia, el Art. III, Sección 6 de la Constitución no autoriza su candidatura a senadora por ese distrito, por lo que procedía revocar el dictamen que emitió el Tribunal de Apelaciones. Debido a que ese curso de acción no obtuvo el aval de una Mayoría, disiento.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lind O. Merle Feliciano, como Comisionado Electoral del Partido Popular Democrático<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, el Hon. Juan Ernesto Dávila Rivera y otros<br><br>Recurridos | CC-2020-0247 |

Voto Disidente emitido por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 27 de julio de 2020.

Disiento respetuosamente. El Tribunal ha decidido dejar en vigor una decisión errónea que permite que una persona aspire a ser senadora por un distrito en el que no reside. Mal comienzan sus vidas políticas la colectividad y la candidata que recurren a esta trampa.

Hoy, este Tribunal permite esa anomalía al no intervenir con la decisión del Tribunal de Apelaciones que la avaló. Algunos invocan que sería un contrasentido acudir al significado común de las palabras y al contexto integral de la Constitución, para concluir que donde la Constitución menciona un "distrito representativo" se refiere a un distrito de la Cámara de Representantes (Const. PR, Art. III, Secs. 3 y 6; Art. VIII, Sec. 1, 1 LPRA), que donde

dice "distrito senatorial" se refiere a un distrito del Senado (Art. III, Secs. 3 y 4; Art. VIII, Sec. 1) y que cuando se refiere a ambos, la Constitución los identifica como "distritos senatoriales y representativos" (Art. III, Secs. 4 y 6; Art. VIII, Sec. 1) o, simplemente, "distritos" (Art. III, Secs. 3, 6, 7 y 8). Dejo al lector identificar si la Constitución quiere decir lo que dice. Véase el Voto disidente de la Jueza Presidenta Oronoz Rodríguez.

Lo que sí es indudable es que la Constitución no les dio a los jueces el poder para enmendarla, mediante una lectura basada en lo que a nosotros nos parece acertado o desacertado en 2020. Lo importante es lo que los constituyentes aprobaron y el Pueblo ratificó en 1952. "Una cosa es decir que tenemos el poder para *interpretar* el documento constitucional, pero algo completamente distinto es conjurar un alegado poder para *cambiar el significado* de su texto. Ello es ajeno al concepto de revisión judicial en nuestro sistema político". AAR, Ex parte, 187 DPR 835, 871-872 (2013).


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado